RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Kevin J. Larner, Esq. (KL-8627)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
(973) 538-0800

Proposed Co-Counsel for David Wolff, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 7 |
| PALISADES PARK PLAZA NORTH, INC., | Hon. Donald H. Steckroth, U.S.B.J. |
| | Case No.: 10-28642 |
| Debtor. | |
| In re: | Chapter 7 |
| CHEMITEK 2006, LLC d/b/a RIVER VALE COUNTRY CLUB, | Hon. Donald H. Steckroth, U.S.B.J. |
| Debtor. | Case No.: 10-28641 |

**OBJECTION OF CHAPTER 7 TRUSTEE TO MOTION OF PRIF II CHEMTEK, LLC AND P II RIVER VALE GC FUNDING, LLC SEEKING DISMISSAL OF CASES PURSUANT TO 11 U.S.C. § 707(a)**

David Wolff, Chapter 7 Trustee (the "Trustee") for the within debtors, Chemitek 2006, LLC d/b/a River Vale Country Club ("Chemitek") and Palisades Park Plaza North, Inc. ("PPPN," and collectively with Chemitek, the "Debtors"), by and through his undersigned counsel, Riker Danzig Scherer Hyland & Perretti, LLP, hereby submits this Objection (the "Objection") to the motion of PRIF II Chemtek, LLC and P II River Vale GC Funding, LLC (collectively, the "Movants") seeking entry of an Order, pursuant to 11 U.S.C. § 707(a),

dismissing the Debtors' bankruptcy cases (the "Motion"). In support of the Objection, it is respectfully stated as follows:

## PRELIMINARY STATEMENT

Through the Motion, which was filed on the first business day after the Trustee was appointed, the Movants seek to dismiss the Debtors' bankruptcy cases prior to the Trustee having had any opportunity to review and investigate the Debtors' assets in a transparent attempt to seize and take control over valuable assets that likely have substantial equity over and above all valid amounts owed to the Movants.

The Movants argue that the Debtors' Chapter 7 cases should be dismissed because the Debtors supposedly filed their pending Chapter 7 petitions in bad faith. The Movants base their arguments upon the fact that the Court dismissed the Debtors' prior Chapter 11 bankruptcy cases as a result of the fact that the Debtors' principal, Kwang Keh, perpetrated a fraud upon the Court by submitting a false certification, and because the Debtors could not possibly effectuate a reorganization in their previous Chapter 11 cases. However, the justification for the Court's dismissal of the prior Chapter 11 cases is no longer present. In fact, the Trustee's sole motivation is to maximize the value of the Debtors' assets so as to benefit *all* the Debtors' creditors, and not just the Movants.

The Movants also contend that by virtue of Mr. Keh's individual bankruptcy case, and the appointment of Stacey Meisel, Esq. as trustee therein, Mr. Keh purportedly did not have the authority on the Debtors' behalf to sign and file the Debtors' bankruptcy petitions. Again, the Movants are incorrect. The appointment of a trustee in Mr. Keh's individual bankruptcy case did not divest Mr. Keh of his management authority over the Debtors' operations, including his ability to sign and file the Debtors' bankruptcy petitions, where Mr. Keh's bankruptcy trustee did

2

not take any affirmative steps to replace Mr. Keh as a board member, managing member and/or officer of the Debtors.

As a result, and for the reasons set forth in detail below, the Court should deny the Motion.

## BACKGROUND

### A. The Debtors' Bankruptcy Filings.

1. On or about June 17, 2010, (the "Petition Date"), the Debtors each filed voluntary petitions for relief with this Court under Chapter 7 of the Bankruptcy Code, thereby commencing these bankruptcy cases.

2. On June 18, 2010, the Office of the United States Trustee appointed the Trustee as Chapter 7 trustee in both of the Debtors' bankruptcy cases.

### B. The Debtors' Prior Bankruptcy Cases

**(i)    The Chapter 11 Cases.**

3. On or about February 5, 2010, the Debtors filed Chapter 11 petitions with this Court, which cases bore case numbers 10-13393 and 10-13394.

4. After the Debtors' principal, Kwang Keh, submitted a certification with the Court containing false statements regarding potential financing for the Debtors, on a motion of the Movants, on or about May 19, 2010, the Court dismissed the Debtors' Chapter 11 cases, determining that the Debtors' principal's false certification, coupled with the Debtors' inability to reorganize, constituted cause for dismissal under 11 U.S.C. § 1112(b).

**(ii)    The Involuntary Chapter 7 Case.**

5. Thereafter, on or about June 3, 2010, three (3) purported creditors of debtor Chemitek filed an involuntary Chapter 7 petition against Chemitek. However, prior to the entry of an order for relief, the Court entered an Order dismissing the involuntary proceeding,

determining that the three petitioning creditors' claims were in bona fide dispute, thereby resulting in the petitioning creditors' failure to satisfy the requirements of 11 U.S.C. § 303(b).

  **C.**  **The Debtors' Assets.**

  6.  The Debtors own various real property including real property located at 600 Rivervale Road in River Vale, New Jersey (the "Golf Course Property"), on which the Debtors own and operate a full service, semi-private golf club known as River Vale Country Club. The Debtors also own real property located at 634, 644, 650 and 654 Rivervale Road, River Vale, New Jersey (the "Development Properties," and collectively with the Golf Course Property, the "Properties").

  7.  Since approximately November 2008, when the Movants were successful in having a receiver appointed for the Debtors in connection with a pre-petition state court foreclosure action instituted by the Movants, Steven Sinisi, Esq. (the "Receiver") has overseen the day-to-day operations of the Debtors' business. Since that time, the Receiver has engaged Young & Associates ("Young") to assist the Receiver in his management of the Debtors' business.

  **D.**  **Movants' Liens/Amounts Owed to Movants.**

  8.  According to pleadings previously filed by the Movants with this Court, the Movants assert that they are owed $21,132,339.37 and further aver that this claim is secured both by mortgages against the Properties and security interests against the Debtors' other assets.

  9.  The Movants further assert that they have obtained a foreclosure judgment against the Properties and had scheduled a Sheriff's sale of the properties when the Debtors filed their bankruptcy petition on June 17, 2010.

10. The Trustee has not yet had the opportunity to investigate whether the Movants property perfected their alleged mortgages and security interests.[1] Further, despite the fact that the Movants assert a claim in excess of $21 million, the Trustee's review of the loan documents previously submitted by the Movants to the Court reveals that the total principal balance owed by the Debtors to the Movants to the Debtors is only $16.3 million. As a result, it is unclear whether the amount of the Movants' claim against the Debtors is actually in excess of $21 million.

### E.    The Debtors' Unsecured Indebtedness.

11. Immediately upon the Trustee's appointment, the Trustee and his counsel participated both in telephone conferences with the Receiver and the Receiver's agent, Young, and had a meeting with Young, which was also attended by Movants' counsel. During those telephone conferences and that meeting, the Trustee and his counsel were advised that the Debtors have a number of unpaid pre-petition vendors and other unsecured creditors, which contradicts the Movants' contention that the Debtors have "few, if any, creditors." (Motion at 2-3).

### F.    The Properties.

12. Prior to filing their Chapter 7 petitions, the Debtors obtained certain appraisals to obtain the market value of the Properties, which reflected that there was substantial equity in the Properties, even if the Movants' claim against the Debtors actually exceeds $21 million.

13. Rather than rely on the Debtors' appraisals, the Trustee immediately has undertaken to obtain an updated appraisal of the Properties, which is currently being conducted, and is expected to be completed prior to the hearing on the Motion. On a preliminary basis, the

---

[1] As of the Petition Date, the Debtors had approximately $550,000 on deposit in their pre-petition bank account. The Trustee believes that the Movants do not hold a properly-perfected lien against these funds. See N.J.S.A. 12A:9-314 (secured creditor must control deposit account to properly perfect liens against deposit account).

5

Trustee is advised that there is, in fact, substantial equity in the Properties <u>even if</u> the Movants' asserted secured claim exceeds $21 million, which would explain why the Movants are acting so aggressively to attempt to seize and take ownership of the Properties.[2]

## **OBJECTION**

I. **THE DEBTORS' BANKRUPTCY CASES SHOULD NOT BE DISMISSED FOR BAD FAITH PURSUANT TO 11 U.S.C. § 707(a).**

    A. **A Dismissal Under 11 U.S.C. § 707(a) Should Only Occur in Very Narrow Circumstances.**

14. 11 U.S.C. § 707(a) provides:

> (a) The court may dismiss a case under this Chapter only after notice and a hearing and only for cause, including --
>
>    (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
>    (2) nonpayment of any fees or charges required under Chapter 123 of title 28; and
>
>    (3) failure of the debtor in a voluntary case to file, within fifteen days of such or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion of the United States trustee.

11 U.S.C. § 707(a).

15. Although not specifically enumerated in Section 707(a), courts have determined that a lack of good faith in filing a Chapter 7 petition may constitute cause to dismiss the Chapter 7 case. See In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000). In making such a determination, a bankruptcy court should consider the totality of circumstances: "An assessment of a debtor's good faith requires consideration of all of the facts and circumstances surrounding the debtor's filing for bankruptcy." In re Perlin, 497 F.3d 364, 372 (3d. Cir. 2007).

---

[2] The Trustee has also been advised that, in addition to the Properties, the Debtors may own other assets with potential value. For example, the Trustee has been advised that one or both of the Debtors own a liquor license issued by the Township of River Vale.

16. In making this determination in a Chapter 7 case, the court should limit its discretion and should act with great care when denying a debtor access to its jurisdiction. See In re Zick, 931 F.2d 1124, 1129 (6th Cir. 1991) (dismissal of a Chapter 7 petition for lack of good faith limited to the most egregious cases).

17. In fact, in a Chapter 7 proceeding, unlike a Chapter 11 case, "a case should be dismissed on account of bad faith only where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7." In re Kane & Kane, 406 B.R. 163, 168 (Bankr. S.D. Fla. 2009).

18. In this regard, the determination of whether to dismiss a bankruptcy case for bad faith under 11 U.S.C. § 707(a) very different than under the corresponding provisions in Chapters 11, 12 and 13 of the bankruptcy code:

> In Chapters 11, 12 and 13, the debtor is allowed to remain in possession of its assets and in control of its business while it has the opportunity to formulate and confirm a proposed plan. Particularly in Chapter 11, this may take a substantial amount of time. So, to offer a very simple example, a debtor who files Chapter 11 solely to take advantage of the automatic stay, without the intent, desire or the ability to propose a plan, might be able to remain under the protection of the bankruptcy court for some time unless there is a way, such as the bad faith inquiry, to quickly test the propriety of the debtor's motivation and goals. In Chapter 7, however, the debtor surrenders possession and control of its property to a trustee, whose control over it and whose prosecutorial powers are much greater than those of a Chapter 12 or 13 trustee; there is also a broader array of weapons immediately available by which creditors and the trustee can quickly combat misconduct that threatens the integrity of the bankruptcy process, see e.g., 11 U.S.C. §§ 523, 547, 548, 727, and proceedings usually move much more quickly.

In re Kane & Kane, 406 B.R. 163, 167-68 (Bankr. S.D. Fla. 2009) (quoting In re Tallman, 397 B.R. 451, 456-57 (Bankr. N.D. Ind. 2008).[3]

19. Even where a debtor's prior Chapter 11 bankruptcy case was dismissed as a result of bad faith findings, a bankruptcy court must nevertheless step back from its prior determinations of bad faith in the Chapter 11 proceeding and focus on the relevant facts and standards in the subsequent Chapter 7 case in order to determine whether a dismissal is warranted. See Kane at 168 ("facts that indicate bad faith in a Chapter 11, 12 or 13 case do not necessarily support a finding of bad faith in a Chapter 7 case of the same debtor."); In re Adell, 328 B.R. 850, 852 (Bankr. M.D. Fla. 2005) ("This Court is satisfied that finding bad faith in filing a Chapter 11 petition has no relevance to the Debtor's rights to maintain a Chapter 7 case.").

20. Moreover, allowing the Debtors' Chapter 7 cases to remain in bankruptcy -- as opposed to merely returning the Debtors' assets to the control of the Receiver -- will also benefit creditors and serves a legitimate bankruptcy purpose. See In re Fasteck Production, LLC, 2010 WL 1463401 (Bankr. E.D. Ok. April 9, 2010).

21. In Fasteck Production, LLC, the debtor filed its Chapter 7 case in large part to avoid the collection actions of its primary creditor and to remove a receiver from managing the debtor's affairs. Id. at *4. Despite the creditor's protestations, the court determined that the debtor's bankruptcy was not filed in bad faith and should not be dismissed:

> Debtor has filed a liquidation bankruptcy, not a reorganization, so it is unlikely that Debtor will obtain some advantage in bankruptcy not present in receivership. Debtor is not entitled to a discharge

---

[3] The bankruptcy court's decision in In re Tallman was reversed and remanded on appeal to the district court. However, this determination was only as a result of the bankruptcy court's failure to even consider certain of the factual assertions raised by the movant therein, and not as a result of any legal error. See In re Tallman, 417 B.R. 568, 578 (N.D. Ind. 2009) ("The Bankruptcy Court's inadequate treatment of several factors put forth by [the movant] and disregard of other factors are inconsistent with a fair application of the 'totality of circumstances'/bad faith analysis under § 707(a)").

8

>   since it is not an individual, 11 U.S.C. § 727(a)(1), nor can it claim exemptions under § 522. . . . The processes of a Chapter 7 bankruptcy are similar to those of a receivership since a trustee assumes control over the assets of the debtor. <u>At the very least, a Chapter 7 will yield similar results to a receivership for Debtor, while yielding better results for all creditors.</u> Therefore, it does not appear to this Court that Debtor filed this case in bad faith or as an abuse of process sufficient to warrant dismissal.

Id. (emphasis added).

22.   Further, it must be pointed out that those rare dismissals of chapter 7 cases are usually the result of a motion to dismiss brought by the chapter 7 trustee. Here, it is a secured creditor trying to dismiss the case.

23.   The Trustee understands that the Court dismissed the Debtors' prior bankruptcy cases as a result of the Debtors' principal's disingenuity, lack of candor and perpetuation of a fraud upon the Court. However, for purposes of this Chapter 7 case, these prior determinations are not germane or dispositive. Instead, the Court should review the limited facts associated with the Debtors' current Chapter 7 bankruptcy filing, and determine whether the debtors' Chapter 7 filings serve a bankruptcy purpose. See Kane, 406 B.R. at 167-68.

24.   When viewed against this framework, the Movants' reliance upon In re Schaefer Salt Recovery, Inc., 542 F.3d 90 (3d. Cir. 2008) is clearly misplaced.

25.   In Schaefer Salt, the bankruptcy court dismissed the debtor's initial Chapter 11 filing based upon its conclusions that the debtor was involved in a two-party dispute with its secured creditor and had filed its bankruptcy petition solely to frustrate that creditor's foreclosure action. 542 F.3d at 94. Following dismissal of the Chapter 11 case, the debtor filed a Chapter 7 petition. The court subsequently dismissed the Chapter 7 petition, based upon the creditors' arguments that the debtor "had no [other] creditors and no assets other than the purported mortgages, and that this latest filing was nothing more than a transparent litigation strategy to delay the foreclosure actions then scheduled to take place in three days." Id. Thus, because the

9

initial Chapter 11 petition was dismissed based upon findings that it was filed with no legitimate bankruptcy purpose, the Schaefer Salt court determined that the subsequent Chapter 7 petition should be dismissed for the same reasons.

26.    The logic of Schaefer Salt does not apply here.

27.    Here, the Court previously dismissed the Debtors' Chapter 11 cases solely because: (i) Mr. Keh, the Debtors' principal, could not be trusted, because he had perpetrated a fraud upon the Court and (ii) the Debtors had no prospect for reorganization:

> We literally have a certification filed in this case by one of the equity interests who tells us that [Mr. Keh] is a cheat, a scoundrel and a liar and took millions from Mr. Kim and never even advised the lender of that or didn't see fit to provide that information in the petition. I see no basis for continuing this case, likely reorganization is nil in this case at this point. There's no potential investor. I can't imagine a potential investor who would deal with these people. Why would you deal with them? They can't be trusted. So the case will be dismissed on the renewed motion and for that reason, the motion to vacate the stay is moot and the trustee's application for the appointment of a Chapter 11 trustee is also moot.

5/18/10 Tr. 17:2-15.[4]

28.    The Court has not previously determined that the Debtors' bankruptcies serve no bankruptcy purpose at all. Indeed, considering the fact that there are very likely substantial assets available for distribution to the Debtors' unsecured creditors, a bankruptcy purpose would clearly be served by keeping these cases in Chapter 7. As a result, the Movants' reliance on Schaefer Salt is unavailing, and the Trustee submits that the Court should instead consider the effect of these Chapter 7 filings, which serve the legitimate bankruptcy goal of preserving the value of estate assets and maximizing the return for all creditors -- not just Movants.

---

[4] Further, as noted *supra*, the Court dismissed the involuntary Chapter 7 petition that was filed against Chemitek based upon a determination that the petitioning creditors' claims were in bona fide dispute, causing the petitioning creditors to be unable to satisfy the requirements of 11 U.S.C. § 303(b). This is also, not germane or dispositive to these Chapter 7 cases.

10

**B.      The Debtors' Chapter 7 Cases Serve a Legitimate Bankruptcy Purpose.**

29.     If these Chapter 7 cases are allowed to proceed, the Trustee will be able to, among other things, preserve the value of the Debtors' assets, including the pursuit of avoidance actions, for the benefits of all creditors.  It would be extremely inequitable for the Movants to be allowed to seize and grab the equity in the Properties for themselves, and further extinguish all other potential estate cases of action, at the expense of all other creditors.

30.     If the Trustee is allowed to market the Debtors' assets, including the Properties, the Trustee will be able to unlock and determine the true value of the Debtors' assets for the benefit of all of the Debtors' creditors.  The Movants' rights will not be negatively impacted by allowing this to occur.  Indeed, the Receiver has been running the Debtors' operations for nearly two years.  To allow the Trustee to market the Properties for a few months, when the Properties have never been marketed before, would not harm the Movants, and would clearly benefit the Debtors' other creditors, who would otherwise have no opportunity to receive any distribution on account of their claims.

31.     As noted, the Trustee has not yet had a chance to perform an investigation of the Debtors' affairs.  However, on a preliminary basis, the Trustee is advised that there is likely significant equity in the Property above and beyond the value of the Movants' claim. Additionally, the Chapter 7 process will permit the Trustee, to, *inter alia*, determine the extent and validity of the Movants' secured claim and to investigate potential avoidance actions.  In contrast, if these cases are summarily dismissed, the Movants will be allowed to simply walk away with very valuable assets, at the expense as of the Debtors' other creditors.

32.     Even if it turns out that the Properties have little or no equity, based upon the Court's prior limited determinations as to the character of Mr. Keh, it is likely that significant avoidance actions exist in these Chapter 7 cases, which if pursued, would potentially allow the

Trustee to obtain recoveries for the benefit of all creditors. As a result, the Trustee submits that the Court should not dismiss these bankruptcy cases so as to benefit solely the interests of the Movants, at the expense of the rest of the creditor body.

### II. MR. KEH IS THE DEBTORS' PRESIDENT AND WAS THE AUTHORIZED SIGNATORY OF THE DEBTORS' BANKRUPTCY PETITIONS.

33. Through their supplemental submissions, the Movants also argue that Mr. Keh was purportedly stripped of the authority to execute and file the Debtors' bankruptcy petitions. For the reasons set forth below, this argument by the Movants is without merit.

34. New Jersey law provides that a corporation is governed by its board of directors -- not its shareholders. See N.J.S.A. 14A:6-1; Riddle v. Mary A. Riddle Co., 54 A.2d 607, 609 (N.J. Ch. 1947) ("The board of directors is the governing body of the corporation and is vested with the management of the corporate property, business and affairs."); In re PSE&G S'holder Litig., 718 A.2d 254, 256 (N.J. Super. Ct. Ch. Div. 1998) subsequently aff'd, 173 N.J. 258, 801 A.2d 295 (2002) ("It is well-settled that 'directors, rather than shareholders, manage the business and affairs of the corporation.'") While shareholders clearly have a right to call board meetings and vote to elect a board of directors, absent such affirmative steps being taken by the shareholders, the board of directors is permitted to continue managing the affairs of the corporation. See, e.g., Casson v. Bosman, 45 A.2d 807, 808 (1946) ("The law of this state commits the management of the affairs of corporations to a board of directors chosen by stockholders and it has been said by our courts that if stockholders do not like the way the corporation is managed their recourse is to elect a new board of directors.") Importantly, "[a]n individual stockholder has not, by reason of his relationship as such, the direction or management of the corporation, and cannot act for it. Nor is such a stockholder, as a result of

such relationship, ipso facto, an agent of the corporation." <u>Mimnaugh v. Atl. City Elec. Co.</u>, 70 A.2d 904, 906 (N.J. Super. Ct. Ch. Div. 1950) (internal citation omitted).

35. Here, the Trustee does not contest the Movants' contentions: (i) that Mr. Keh's equity ownership interests in the Debtors is property of his personal Chapter 11 bankruptcy estate and (ii) that Mr. Keh's bankruptcy trustee succeeded to Mr. Keh's rights as owner of those interests. However, as is set forth above, because Mr. Keh's trustee has not ousted the Debtors' board of directors and management, Mr. Keh's trustee does not control the Debtors' businesses, and certainly does not, by virtue of the transfer of stock ownership, displace and revoke the authority of the Debtors' current management to file the instant Chapter 7 petitions.

36. Here, Mr. Keh's bankruptcy trustee has not taken any action to oust Mr. Keh from his position as board member, a managing member or an officer of the Debtors. As a result, Mr. Keh was properly authorized to file the Debtors' bankruptcy petitions -- and the Movants' arguments to the contrary have no basis.

### III. THE MOVANTS' REQUEST FOR SANCTIONS.

37. The Trustee does not take any formal position with respect to the Movants' request that the Debtors and Mr. Keh be sanctioned for filing these Chapter 7 cases. However, based upon the Trustee's belief that these Chapter 7 cases clearly serve a legitimate bankruptcy purpose, it does not appear that any grounds for sanctioning either Mr. Keh or the Debtors exist.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion, and grant the Trustee such other and further relief as the Court deems just and equitable.

Dated: July 8, 2010
Morristown, New Jersey

RIKER DANZIG SCHERER HYLAND & PERRETTI, LLP

By:  /s/ Joseph L. Schwartz
Joseph L. Schwartz

Proposed Co-counsel for David Wolff, Chapter 7 Trustee

4055202.3